JAMES D. ALEXANDER, Individually and as Father of RICHARD E. ALEXANDER, an Infant, Respondent, v. EARL STONE et al., Respondents, and TRAVELERS INSURANCE COMPANY, Appellant.

Fourth Department, July 5, 1974.

*Adams, Brown, Starrett & Maloney, P. C. (Edmund S. Brown, Jr.,* of counsel), for appellant.

*Serotte, Hoffman, Serotte, Haley & Green (F. Lambert Haley* of counsel), for James Alexander, respondent.

*Miller, Bouvier, O'Connor & Cegielski (John W. Cegielski* of counsel), for State Farm Mutual Automobile Insurance Company, respondent.

WITMER, J. Travelers Insurance Company (Travelers) appeals from a judgment declaring that State Farm Mutual Automobile Insurance Company (State Farm) was justified in disclaiming insurance coverage for its insured, Otis Mosley, because of his failure to co-operate in the defense of an action against him for injuries allegedly arising from the operation of his insured automobile, and further declaring that if plaintiffs' injuries were caused solely by Mosley's negligence, plaintiffs have a claim therefor against Travelers under the Uninsured Motorist Endorsement contained in the insurance policy (issued by Travelers) on the automobile of Earl Stone in whose vehicle plaintiffs were passengers when it was in collision with Mosley's automobile. This action for declaratory judgment was begun after plaintiffs received notice from State Farm of its disclaimer. Upon trial of the declaratory judgment action the following evidence was presented.

The accident occurred on April 14, 1968 and three days later Mosley reported the accident to his insurance agent and duly filed form MV-104, showing that State Farm was his insurer and that his address was 134 Best Street, Buffalo, New York. Mosley had only a third or fourth grade education and "cannot read too well". Over three months after the accident State Farm assigned a field claims representative to investigate it. He went to No. 162 Best Street, which was the address given to him but which was where Mosley had formerly lived. Finding no one there, he left his business card, requesting Mosley to contact him. Four months thereafter, on November 27, 1968

State Farm employed a law firm to represent it in the matter, and the firm promptly sent a registered letter to Mosley addressed to 134 Best Street, seeking his co-operation with respect to claims arising from the accident. The letter was returned, " No Answer ". On January 10, 1969 the firm sent a follow-up letter to Mosley, advising him that State Farm had retained them; but they received no response. In June, 1969 the firm received from plaintiffs' counsel an affidavit of service of summons and complaint on Mosley, and in behalf of Mosley on June 23, 1969 the firm interposed an answer thereto. In October, 1969 the law firm moved for examination before trial of plaintiffs, to be held on December 1, 1969, and the firm sent an alert letter to Mosley advising him thereof and asking him to notify them by the enclosed return postal card of his availability. The card was not returned; the examination before trial was adjourned and another alert letter was sent by registered mail to Mosley on December 19, 1969; but it was returned unclaimed.

At the law firm's request State Farm then ordered a credit report of Mosley. That resulted on March 19 and 20, 1970 in an investigation which showed that Mosley resided at 134 Best Street and was employed at Hanna Furnace Corp. In July, 1970 State Farm again sent its field claims representative to contact Mosley, this time at 134 Best Street and this being two years after his first attempt to find Mosley. He found no one at home and again left a card. He received no response therefrom.

The negligence case was pretried in Supreme Court in December, 1970 and was transferred to Buffalo City Court for trial. State Farm's attorneys then filed in that court a demand for jury trial in behalf of Mosley.

On February 9, 1971 a private investigator was employed by the law firm to locate Mosley, and the latter was found residing at 166 Oxford Street. The investigator told Mosley that he represented a law firm employed by Mosley's insurance company and that he should contact that law firm. Mosley replied that since he had filed a report of the accident he did not feel that he had anything more to do. The law firm advised State Farm of this on March 16, 1971, and also sent a letter to 166 Oxford Street advising him that his failure to co-operate would result in a disclaimer by his insurer. No response was received. On April 5, 1971 the firm sent a certified letter to Mosley reminding him of his insurer's right to disclaim and asking him to telephone the firm. The firm received a receipt from the post office

signed by Mosley acknowledging that on April 8, 1971 he had received this letter; but he made no other response.

A month later, on May 11, 1971, nearly three years after he was first assigned to this matter, State Farm's field claims representative and a lawyer from the retained law firm had an appointment to interview Mosley at his place of employment, Hanna Furnace Corp. They learned, however, that he was ill that day and did not come to work, and the appointment was canceled. The field claims representative made no further attempt to contact Mosley.

Later that month the law firm sent a letter to the personnel department of Hanna Furnace Corp. enclosing a letter for Mosley which warned him of a possible disclaimer. On June 8, 1971 an employee of the corporation delivered the letter to Mosley and read it to him. He advised Mosley to contact the law firm, and he also asked him why he had not done so before and Mosley answered that he had changed insurance companies and did not think that "he had any continuing liability". Mosley then telephoned the law firm and made an appointment to call at their office the next morning. Mosley testified that he went to the law office the next morning and talked with an attorney there who took a statement from him and said that they would contact him; but he did not hear from them again until September, 1972. The law firm acknowledged receiving Mosley's telephone call on June 8, 1971 but asserted that Mosley failed to appear for the appointment the next morning. On that same day, June 9, and again on June 21, 1971, however, the law firm recommended that State Farm disclaim under the policy, and on July 6, 1971 State Farm sent a letter of disclaimer to Mosley and notified plaintiffs of its disclaimer. Nevertheless, on September 6, 1972 it sent a trial alert letter to Mosley, but it was returned marked, "Moved. No forwarding address".

Mosley testified that when the private investigator came to see him in February, 1971 he took a statement from him regarding the accident and told him not to speak to anyone about the case and that he would contact Mosley later.

Subdivision 5 of section 167 of the Insurance Law provides that when an insurer disclaims upon the ground of the insured's failure or refusal to co-operate, "the burden shall be upon the insurer to prove such alleged failure or refusal to cooperate". The burden of proving lack of co-operation is a heavy one, since a disclaimer penalizes the injured party for the alleged action of the insured and frustrates the New York policy that innocent victims of motor vehicle accidents be recompensed for injuries

suffered by them (*Thrasher* v. *United States Liab. Ins. Co.*, 19 N Y 2d 159, 168, citing *Wallace* v. *Universal Ins. Co.*, 18 A D 2d 121, affd. 13 N Y 2d 978; *Kehoe* v. *Motorists Mut. Ins. Co.*, 20 A D 2d 308; Vehicle and Traffic Law, § 310, subd. [2]). In *Thrasher* the Court of Appeals placed a three-pronged burden of proof requirement upon the insurer (pp. 168–169): "Thus, the insurer must demonstrate that it acted diligently in seeking to bring about the insured's co-operation (*Amatucci* v. *Maryland Cas. Co.*, 25 A D 2d 583; *Rosen* v. *United States Fid. & Guar. Co.*, 23 A D 2d 335 [overruled on other grounds by *Matter of Vanguard Ins. Co. (Polchlopek)*, 18 N Y 2d 376]; *National Grange Mut. Ins. Co.* v. *Lococo*, 20 A D 2d 785, affd. 16 N Y 2d 585; *Kehoe* v. *Motorists Mut. Ins. Co.*, supra); that the efforts employed by the insurer were reasonably calculated to obtain the insured's co-operation (*National Grange Mut. Ins. Co.* v. *Lococo*, supra; *Wallace* v. *Universal Ins. Co.*, supra); and that the attitude of the insured, after his co-operation was sought, was one of 'willful and avowed obstruction' (*Coleman* v. *New Amsterdam Cas. Co.*, 247 N. Y. 271, 276; *American Sur. Co.* v. *Diamond*, 1 N Y 2d 594)."

The foregoing facts show that State Farm failed to act diligently in seeking Mosley's co-operation. The field claims representative of State Farm attempted to locate Mosley at 162 Best Street in July, 1968, three months after the accident, while the MV-104 report filed by Mosley three days after the accident stated that his address was 134 Best Street. The representative did not attempt to visit Mosley again until July, 1970, two years later, and upon failing to find him, he made no further effort until May 11, 1971 when an appointment with Mosley at his place of employment was canceled because Mosley was ill. The representative thereupon terminated his efforts, never having talked with Mosley.

The law firm was not retained by State Farm until six months after the accident. During the next year they sent four letters to Mosley, to wit, on November 27, 1968, and on January 10, October 23, and December 19, 1969. This was their only effort during this period, even though the letters were either returned unclaimed or no response was made to them by Mosley, and even though they knew Mosley was available because he had been served by plaintiffs with summons and complaint. No effort to communicate with Mosley was made in 1970, except when the field claims representative made his second call at Mosley's address and left his card. Although State Farm learned in March, 1970 of Mosley's place of employment, it made no effort

to reach him there until May, 1971. When the private detective located Mosley in February, 1971 at his new residence address, he told him to contact the law firm, but did not warn him of the consequences of failure to co-operate. The last two letters sent to Mosley warned him of disclaimer; and Mosley signed a receipt of the second letter, received by the law firm in April, 1971, which was also evidence that he was available if anyone really wanted to see him. His telephone call to the law firm on June 8, 1971 in response to their next letter to him, making an appointment for the next day, was evidence of willingness on his part to co-operate. Regardless of whether we believe Mosley, that he appeared at the office of the law firm the next morning and gave them a statement of the accident, or believe the law firm that he failed to appear, the extent of the zeal of State Farm to secure Mosley's co-operation seems exemplified by the recommendation of the law firm on that very day that State Farm disclaim, and disclaimer followed in the next month.

State Farm's efforts to locate Mosley can hardly be said to have been diligent or reasonably calculated to find him or secure his co-operation, and this is particularly so in view of Mosley's scant education and understanding. This latter aspect of the matter also bears strongly on the third element of the insurer's burden, to wit, whether the insured's attitude was one of " willful and avowed obstruction ". Mosley lacked understanding, but there is no evidence of deception on his part or of intent to obstruct, and he fully co-operated by stating the facts of the accident whenever he was asked in person to do so (cf. *Employers-Commercial Union Ins. Cos.* v. *Buonomo,* 41 A D 2d 285). State Farm, therefore, has completely failed to carry its " heavy burden " to establish Mosley's lack of co-operation.

Moreover, for another reason State Farm's disclaimer is a nullity. It delayed for over three years from the time that Mosley filed his accident report before notifying him and plaintiffs of the disclaimer. " The Motor Vehicle Accident Indemnification Law [of which Insurance Law, § 167, subd. 8 is a part] has, in effect, established an absolute rule that unduly delayed disclaimer of liability or denial of coverage violates the rights of the insured, the injured party, and MVAIC " (*Allstate Ins. Co.* v. *Gross,* 27 N Y 2d 263, 269). State Farm waived its right to disclaim when it proceeded in 1969 to defend the action and continued thereafter for three years to manage the defense thereof without seriously attempting to locate Mosley (*Allstate Ins. Co.* v. *Gross, supra*; *Appell* v. *Liberty Mut. Ins. Co.,* 22 A D 2d 906, affd. 17 N Y 2d 519; *Matter of Empire Mut. Ins. Co.* [*Stroud*], 43 A D 2d 931; 2 NY PJI 1058 [Supp.]).

.For these reasons the judgment should be reversed on the law and facts and judgment entered nullifying the disclaimer and declaring that State Farm must defend Mosley in the action in negligence by plaintiffs against him, and if plaintiffs are successful against him, to pay the resulting judgment to the extent of the insurance coverage.

MARSH, P. J., SIMONS, GOLDMAN and DEL VECCHIO, JJ., concur.

Judgment unanimously reversed on the law and facts, with costs, and declaratory judgment granted in accordance with opinion by WITMER, J.